E. E. Forbes Piano Company *v.* L. Hennington.

[53 South. 777.]

Justice of the Peace. *Execution sale. Lien under execution.*

A justice of the peace cannot legally purchase property sold under an execution on a judgment rendered by him. Such sale is void as under Code 1906, § 3959, the execution must be returned to him and before him all motions must be made to quash or vacate it.

A sale made under a judgment of a justice of the peace is a judicial sale.

A lien established when an execution is levied falls with the execution.

A sale under execution made after the return day of the execution is void.

Appeal from circuit court of Marion county.

Hon. W. H. Cook, Judge.

This is the second appearance of this case before this court, the same on its first appearance having been reversed and remanded by this court, and is reported in 48 Southern 609.

In the court below Forbes Piano Company was plaintiff and L. Hennington was defendant. From a judgment in favor of defendant, plaintiff appeals.

The facts in the case are as follows:

Mrs. Williams owned a piano in October, 1907, and claims to have sold the same through her husband acting as her agent to appellant, the Forbes Piano Company, at that time, but retained possession. She gave them a bill of sale either on the 23d of October, 1907, or on the 17th of January, 1908, the testimony is conflicting on this point. In December of the year 1907, this piano was sold under an execution from a judgment against Mrs. Williams and bought by L. Hennington, the appellee herein, who was a justice of the peace, and had rendered the judgment under which the property was sold. The property was not sold until after the return day of the execution. The Forbes Piano Company, appellant, brought an action of replevin against Hennington, but failed to recover judgment against him, and from a judgment in favor of Hennington, the Forbes Piano Company appeals.

*R. P. Willing,* for appellant.

It is perfectly manifest from the record that Hennington acquired no title to the piano. The sale under which he claimed title to the piano was void. Strange to say the defendant instead of introducing the judgment and execution, simply introduced the return on the execution. The piano was levied upon on the 14th of December, 1907, and sold on the 28th of December, 1907. L. O. Magee the sheriff, and his deputy Dort Yorborough testified that the execution was issued on the 14th of December, 1907, and that the piano was sold on the 28th of December, 1907, under that execution.

It further appears from the testimony of the defendant himself that the judgment was rendered by the defendant and the execution was issued by him, and that he became the purchaser at the sale under the execution. The sale under which defendant claims title is therefore void for several reasons. In the first place the testimony shows that the sale under the execution was made on

the 28th of December, 1907. Whereas the execution was returnable on the 23d of December, 1907. A sale under an execution after the return day is void. *Williams* v. *Williams,* 52 Miss. 785.

In the second place the sale was void because the purchaser, Lamar Hennington, was the justice of the peace who rendered the judgment and issued the execution thereon under which the sale was made.

It has been held that a justice of the peace cannot purchase at a sale under an execution based on a judgment rendered by him especially when the execution was issued by him.

"No person can become a purchaser at a judicial sale who has a duty to perform in reference thereto which is inconsistent with the character of purchaser. . . . Neither can the judge who ordered the sale become the purchaser, or be interested in the purchase." 24 Cyc. 29. See the following authorities: *Livingston* v. *Cochran,* 33 Ark. 294; *Tracy* v. *Colby,* 55 Cal. 67; *Hoskinson* v. *Jaquess,* Haar. (Mich.) 259.

It appears from the testimony of Lamar Hennington himself that the judgment under which the sale was made was never placed on the judgment roll and was therefore not a lien on the piano.

We thus see from the evidence that the appellee was in possession of the piano under a void sale. He had no right to it whatever and it does not avail him that under the testimony the bill of sale might have been signed in January instead of the October preceding.

I submit that the peremptory instruction asked for by the plaintiff ought to have been given, and that this case therefore should be reversed.

*Lamar Hennington,* for appellee.

Unless the record shows that appellant has proven that it had title to the piano when this replevin suit was filed, this case ought to be affirmed. And the appellant

has failed to show title in itself either at the time the suit was filed or afterwards.

By careful reading of the record it will be seen that the piano in question was the property of Mrs. J. S. Williams, the wife of one Mr. J. S. Williams, and that he, Mr. J. S. Williams, the husband, signed the bill of sale in his own name. He did not even sign the bill of sale in the name of his wife, the owner of the piano. The record shows also that the owner of the piano, Mrs. J. S. Williams, did not sign the bill of sale, was not present when it was signed, and did not authorize any one to sign same, so that the title to this piano has never been in E. E. Forbes Piano Company. Nowhere does it appear in the record that Mrs. J. S. Williams, the owner of the piano, signed or authorized the signing of the bill of sale; and we submit that the title could not pass by the execution of the bill of sale by Mr. J. S. Williams in this manner.

The appellee is not called upon in this case to show title in himself, but the burden is on appellant. It is not necessary in the consideration of this case to decide whether the execution sale was valid or not, because the case will have been decided before that point is reached.

It will be borne in mind that possession of the piano was not given to appellant, but was left exactly in its original position in the house of the owner, Mrs. J. S. Williams, until the sheriff carried it away under the writ of execution, and if the bill of sale did not convey title to appellant, this case aught to be affirmed.

*Watkins & Watkins,* on same side.

It is contended by appellant that the sale was void because Mr. L. Hennington, the appellee in this cause was the justice of the peace who rendered the judgment. We simply submit, if the court please, that this would not incapacitate Mr. Hennington from purchasing at the

sale. It is indisputably shown that this was a public sale at the court house door in the presence of a great many people, and Mr. Hennington came there, like any other bidder, and there were a number of bidders on the piano, and it was finally struck off to Mr. Hennington for the sum of a hundred dollars, for which amount he gave the sheriff his check.

We respectfully submit that as a proposition of law a justice of the peace is not debarred from purchasing at an execution sale for the mere reason that he rendered the judgment. The counsel for appellant cite in their brief some authorities showing that a judge cannot be a purchaser at his own sale; but there are cases where the judge who rendered the decree also decreed the sale. In other words, a judge directed the property to be sold by decree. In this case, the justices of the peace simply rendered a judgment by default upon proper process. After the expiration of five days, he issued an execution thereon, and then appeared at the sale and like any other person could have done, bid on the property. His judicial functions were at an end, and the record discloses the fact that the sale was absolutely fair beyond any question, and that the piano brought a good sound price.

The counsel for appellant states as a proposition of law that a judge who orders a sale cannot buy at the sale, and refers as his authority for the statement to the article on Judicial Sales, in the 29th volume of Cyc. All the cases cited by counsel, are, strictly speaking, judicial sales; that is to say, sales made under the decree of some court, and because of the fact that the judge who orders the specific sale would have to confirm the same, it is held that he is incapacitated to purchase at said sale. The distinction, however, lies in the difference between judicial and ministerial sales. In the 17th volume of Cyc., p. 1233, note 76, a distinction is observed, and it is held therein that the sale of property under

an execution is a ministerial sale and not a judicial sale. There are a number of cases cited supporting the proposition, and we content ourselves with reference to the same. No reported case which we can find holds that a justice of the peace is incapacitated to purchase at a sheriff's sale, because of the fact that he rendered the judgment and issued the execution. The difference being that a sheriff's sale under execution is performing purely ministerial duties. We, therefore, respectfully submit that it was perfectly competent, and in no way invalidated the sale, that Mr. Hennington, the purchaser and appellee in this cause was the justice of the peace.

We will go further, however, and state that even if the sale in question was absolutely void for the reasons contended by appellant's counsel, still the appellant is not entitled to recover.

It is admitted that a valid judgment was obtained and a valid execution levied thereon. We refer the court to section 3971 of the Code, which fixes a lien upon property by reason of the levy of an execution. It is only essential that an execution shall be levied; when it is levied then the execution lien takes effect. That being true, even if a void sale was made, still the appellant was not entitled to recover, since if the officer made a void sale, the vendee, who is the appellee, at the execution sale became subrogated to all the rights of the execution creditor, and is now entitled to a *vendi exponas* issue, in order to effect a valid sale of the property. (See sections 3990 of the Code.) The only effect of the invalidity of the sale, if any, was to leave the property levied on subject to levy, and subject to the further order of the court at any regular return day. The mere fact that a void sale is made does not discharge the property from the levy. The property remains theoretically in the custody of the officers, subject to the levy, and remains charged with the same lien, and liable for such other process as may be legally issued against it, and

the appellant having only acquired his rights in reference to the piano on January 17, 1908, after levy was made, is not entitled to recover. This being true, it is perfectly proper for the court below to submit to the jury the only question of disputed fact in the case, which was the date of the bill of sale under which the appellant claimed.

The action of replevin is a possessory action. The plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's. Nothing is involved in the replevin suit but the right of possession. If the levy of the execution was paramount, then the appellant was not entitled to the possession of the property. The court below and the attorneys who tried this case evidently had the conception of it that we have indicated, which accounts for the fact that the sole issue found in the instructions on both sides was submitted to the jury.

In conclusion, we will state that we rely for affirmance of this judgment upon the facts.

1st. That by virtue of the verdict of the jury, it is demonstrated that the appellant acquired no right with reference to the piano in question until January 17, 1908, at which time the piano had been levied upon and sold to the appellee under and by virtue of an execution, and that even if the sale to the appellee was invalid, and we claim it was valid, the property still stands charged with the execution lien.

2d. That appellant itself secured the submission of its case to the jury upon one solitary issue of fact, and it must now be held to that issue.

3d. The motion for a new trial presents nothing to be adjudicated by this court. It did not assign as error the refusal upon the part of the court to give it any instructions nor did it direct the attention of the court to any erroneous instructions given for the appellee. In fact, the motion for a new trial did not direct the

attention of the court to any of the questions argued by
the counsel for the appellant on this appeal, and it was
not sufficient to raise these questions.

4th. We have demonstrated to the court that the sale
to Lamar Hennington was perfectly valid in every re-
spect, and even if invalid, the property stands charged
with the execution lien, and the appellee is subrogated
to the rights of the execution creditor.

Again this question has suggested itself to us, that
this suit on the part of the appellant is a collateral
attack on the sale made by the sheriff of Marion county
of the piano herein involved. The judgment debtor
made no attack upon the sale; not only did she make no
attack thereupon, but it appears from the testimony of
the appellee himself that after he had purchased the
piano in question that he discussed the sale with Mr.
Williams and tried to get Mr. Williams to buy the piano
back and that there was some negotiation between them
looking to that end. The record discloses the fact that
while there was perhaps no formal waiver of any defect
which may have existed in the sale still there was not the
slightest objection manifested to the sale upon the part
of the judgment debtor. She was the real party inter-
ested at the time when the sale was made and was the
only party who could object to the same. Now upon the
22d day of January, 1908, when the bill of sale was act-
ually signed and delivered as the jury have decided, the
appellant was notified of the fact that the piano had
been levied upon and bought in by Mr. Hennington and
there was no suggestion upon the part of the judgment
debtor or her husband that they desired to question the
validity of the sale itself. The bill of sale to the appel-
lant which the jury say was given on the 22d day of
January, 1908, was made by Mr. Williams with no view
to questioning the validity of the execution sale, but
upon the other hand Mr. Williams testifies that the ap-
pellant's agent told him that he did not care anything

about the piano having been levied upon and sold and that all Mr. Shuford wanted was a written document to put himself right with his company, the appellant in this case. The appellant being a stranger to execution his right to question the sale in a collateral proceeding is much more limited than that of the judgment debtor.

In the case of *Stout* v. *Brown,* 64 Ark. 96, it was held that an execution sale in a collateral proceeding could not be attacked for irregularities. The same is held in the case of *Williams* v. *Bennett,* 112 American State Reports 57; and also in the case of *Clark* v. *Glos,* 72 American State Reports 223; *Boss* v. *Morgan,* 30 American State Reports, 237.

The failure of the sheriff to advertise land properly as required by law renders the sale not void, but voidable. It is, therefore, not liable to a collateral attack. *R.* v. *Hazen,* 33 Kan. 71. An execution sale of land in one parcel which should be sold in several parcels is voidable only and not void and cannot be attacked in a collateral proceeding. *Brown* v. *O'Donnell,* 81 N. W. 961. A sale of property made under a defective order of publication is voidable, but not void and the same cannot be invalidated in a collateral proceeding. *Kane* v. *McCown,* 55 Mo. 181. To the same effect see *Allen* v. *Webb,* 105 American State Reports 610; *Smith* v. *Olson,* 56 S. W. 568; *Taylor* v. *Doom,* 95 S. W. 4. This citation of authorities is we think sufficient to sustain the proposition and in order for the appellant to assail the transfer made by the sheriff it must be shown that there was a void sale. There being no dispute about the fact that this replevin suit is a collateral attack upon the sheriff's sale.

With this view in mind let us examine the defects in the execution sale relied upon by the appellant. It claims, first, that the same is void because the judge who issued the execution bought at the sale. We desire to say, however, that all of the authorities which hold

that a judge cannot buy at his own sale, hold that sales of this character are not void but voidable. Appellant's counsel refers the court to 24 Cyc., page 29, where the general rule is laid down that the judge who orders the sale cannot become a purchaser. However, in the very next sentence the same authority states that such sale would not be void, but voidable only and refer you to a list of cases given in note 21 on page 30. This disposes of that contention. Mr. Hennington, the appellee, might have been incapacitated to purchase at the execution sale, still that did not render the sale void, it was only voidable and being voidable only Mrs. Williams could have taken advantage of the same, but a third person cannot and especially not in a collateral proceeding.

It is next contended that the sale was void because the same was made after the return day. Let us concede for the purpose of argument that the sale was made after the return day, according to the contention of the appellant the sale was made five days after the return day. This, however, did not render the sale void. The court must bear in mind the fact that the subject of this sale was personal property and not real estate. In the case of *Williams* v. *Williamson,* 52 Miss. 725, the court seemed to hold that a sale of land made after the return day was void. We desire, however, to call the attention of the court to the fact that in that case the court seems to have proceeded somewhat upon the admission of counsel. The court uses the following words:

"It is admitted that ordinarily a sale under execution made after the return day thereof confers no title."

The court then proceeds to declare that the sale was void for another and better reason. First, that the third Monday in February was not a proper time to make a sale of land, it not being the first day of a regular term of the circuit court as was supposed by the plaintiff's counsel, who directed the sale to be made on that day.

This is the only authority we have in our state for the doctrine announced by appellant's counsel in his brief, that every sale made after the return day is absolutely void.

We wish to attack this proposition as not being sound and say in absence of a statute that it is not the law even in regard to real estate and that when they refer to sales of personal property, the authorities are uniform that the sale is not void.

In the case of *Moomy* v. *Mass.,* from the supreme court of the state of Iowa, 92 American Decisions page 395, it is held that an execution sale of real estate made after the return day, where the levy occurred before the return day, was not void and that a new execution was not necessary. In the case of *Pettingill* v. *Moss,* 74 American Decisions, at page 747, it is held that where an execution was levied before the return day and a sale was made after the return day it was neither void nor voidable. In the notes on page 749 it is stated that some conflict exists in the authorities in regard to the sale of real estate, but sustaining the proposition that sales of personalty levied upon before the return day may be made thereafter are the following: *Evans* v. *Governor,* 54 American Decisions, 172, and *Barrett* v. *Mc-Kenzie,* 24 Miss. 23. The same is stated in the case of *Stein* v. *Chambliss,* 87 American Decisions 411, and is well supported by cases cited in note on page 413.

The following cases absolutely hold that where an execution has been levied before the return day that the sale may be had thereafter: *Lowry* v. *Reed,* 89 Ind. 442; *Bradley* v. *Sand,* 61 American State Reports 386; *Kane* v. *McCowan,* 55 Mo. 121; *Karnes* v. *Alexander,* 92 Mo. 660; *Huff* v. *Morton,* 94 Mo. 405; *Williams* v. *Lindsey,* 146 Mo. 509. In the Supreme Court of the United States in the case of *Wheatton* v. *Lessee* it is held that a sale under an execution duly issued is legal as respects the purchaser provided the writ be levied upon before

the return day, although the sale be made after the
return day. The same doctrine is held in the state of
Alabama in the case of *Bondurant* v. *Buford,* 35 Ameri-
can Decisions 33; in the state of Iowa in the case of
*Butterfield* v. *Walsh,* 8 American Decisions 557; *Thorn-
ton* v. *Allen,* 92 American Decisions 395; in the state of
Minnesota in the case of *Pettingill* v. *Moss,* 74 American
Decisions 747; in the state of South Carolina, *Toomer* v.
*Purkey,* 2 American Decisions 634; in the state of Ver-
mont in the case of *Bernard* v. *Stevens,* 12 American De-
cisions 733.

In addition to the cases cited above the following
authorities directly sustain the proposition: *Willouby*
v. *Dewey,* 63 Ill. 246; *Fink* v. *Lallande,* 16 La. 547; *John-
son* v. *Bemis,* 7 Neb. 224; *Wyant* v. *Tuthill,* 17 Neb. 495;
*McClenahan* v. *Humes,* 25 Pa. St. 85; *Kelly* v. *Green,* 53
Pa. St. 302; *Rogers* v. *Cawood,* 31 Tenn. 142. An exam-
ination of these cases will reveal the fact that there is
some dispute about the proposition as to whether or not
real estate can be sold after the return day, but the
authorities are practically unanimous that a sale of per-
sonalty is not invalid thereby.

Argued orally by *R. P. Willing,* for appellant, and by
*L. Hennington,* and *Watkins & Watkins,* for appellee.

Mayes, C. J., delivered the opinion of the court.

In this complicated record there are some controlling
facts which admit of no dispute. It is clear that Wil-
liams and his wife, being the owners of the piano in
question, executed a valid bill of sale to same to the
Forbes Piano Company either on the 23d day of October,
1907, or about the 17th day of January, 1908. In the
decision of this case it is not necessary to determine
which date is correct, or to undertake to reconcile the
conflicting testimony on this point. When the Wil-
liamses executed this bill of sale, it conveyed all right,
title, and interest which they had in the piano to the

Forbes Piano Company, and that company became the owner of same, subject to all prior equities in favor of third parties arising before the conveyance was made. Lamar Hennington was the justice of the peace in whose court Mrs. Williams was sued for a grocery bill, resulting in a judgment of some sixty-odd dollars. This judgment was rendered some time about the 26th of October, 1907, and was never enrolled, and therefore never became a lien on the property until an execution was issued thereunder and levied on the property. Subsequent to the rendition of the judgment an execution was issued on the judgment, issuing from the office of Lamar Hennington, and levied on this piano, and the piano sold under this execution, at which sale Hennington himself, the justice of the peace who rendered the judgment became the purchaser thereof.

Under section 3959 of the Code of 1906, this execution must be returned to the court rendering the judgment, and it is in that court that all motions must be made to quash or vacate it. This being the case, if a justice of the peace is allowed to purchase at an execution sale under one of his own judgments, he may be called to sit in review upon the validity of a sale in which he is interested as purchaser and called upon to preside as judge. This, of course, is repugnant to our laws. It is contended on behalf of appellee that the laws which prohibit a judge from purchasing apply only to judicial sales, and that a sale made under a judgment of a justice of the peace is not a judicial sale within the meaning of the law. There is some authority to this effect; but the cases which hold that a sale made under the judgment of a justice of the peace is not a judicial sale so hold on a construction of their particular statute, and have no application to this case. In 16 Neb. 407, 20 N. W. 277, in the case of *Neligh* v. *Keen,* the court held that a judicial sale applied to sales under execution, as well as any other order, and in the case of *Seymour* v.

*National Building & Loan Association,* 116 Ga. 285, 42
S. E. 518, 94 Am. St. Rep. 131, the same is held. Al-
though a lien was established when the execution was
levied, the lien falls with the execution. A valid sale
was not made under the execution, and the execution was
void after the time for its return had passed without
valid action thereunder. It may be that the piano is
subject to a *vendi. exponas*; but we are bound to reverse
this case in its present attitude.

*Reversed and remanded.*

Suggestion of error filed and overruled by the court
without further opinion.