A02A2386, A02A2387. ADVANCE TUFTING, INC. v. DANESHYAR; and vice versa.
(577 SE2d 90)

ELDRIDGE, Judge.

In Case No. A02A2386 appellant-plaintiff Advance Tufting, Inc. appeals from the Superior Court of Murray County's grant of summary judgment to appellee-defendant Mohammed Daneshyar upon its amended complaint on open account[1] as barred by the statute of limitation. In Case No. A02A2387, Daneshyar cross-appeals under the right for any reason principle, see *Golden Peanut Co. v. Bass*, 275 Ga. 145, 150 (3) (563 SE2d 116) (2002); *Griffin v. Tift County*, 242 Ga. 746, 747 (251 SE2d 262) (1978), contending that even were Advance's

---

[1] A suit on open account is a simplified pleading procedure where a party can recover what he was justly and equitably entitled to without regard to a special agreement to pay such amount for goods or services as they were reasonably worth when there exists no dispute as to the amount due or the goods or services received. An action on open account may be brought for materials furnished and work performed. However, if there is a dispute as to assent to the services or to acceptance of the work done or as to what work was to be performed and the cost, then an action on open account is not a proper procedure. *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 27 (b) (485 SE2d 563) (1997).

amended complaint not time-barred, summary judgment for him nonetheless was proper given his status as purchasing agent for Gulf Palace Furnishings Company, W.L.L. ("Gulf Palace"), a Kuwaiti corporation, the corporate existence of which Advance is estopped to deny. Because the superior court properly determined that the applicable statute of limitation had run in Case No. A02A2386, we affirm the grant of summary judgment to Daneshyar therein and thus dismiss Daneshyar's cross-appeal as moot in Case No. A02A2387. *Held*:

By its amended complaint, Advance sought to recover $95,209.92, the balance owing on Daneshyar's account plus commercial interest thereon, as to carpeting it sold him upon invoices dating from January 18, 1994, through July 11, 1996. While Daneshyar's status as the agent of Gulf Palace is disputed in the record, there nonetheless is evidence showing that by letter to Gulf Palace, dated March 29, 1999, and written to Daneshyar's attention, Advance noticed Gulf Palace of its intent to commence collection action as to amounts in arrears on its Gulf Palace account. Advance attached a copy of Gulf Palace's statement of account to that point, the last invoice entered thereon as dated July 11, 1996. On April 21, 1999, Daneshyar as President of Gulf Palace wrote Advance a letter requesting[2] an offset in the amount of $31,650 against its Advance account — this purportedly for storage fees which Gulf Palace had avoided by reselling carpeting received from Advance in a damaged condition. Advance filed the instant lawsuit on August 17, 2001.

On appeal, Advance challenges the grant of summary judgment for Daneshyar as time-barred, the governing four-year statute of limitation, OCGA § 11-2-725 (1), as not triggered under OCGA § 7-4-16 by the last invoice sued on, that of July 11, 1996. In support of this claim, Advance argues that: (a) the governing statute of limitation was not triggered by OCGA § 7-4-16 for want of evidence showing that it invoiced Daneshyar individually for carpet or that Daneshyar, individually, received any such invoice; and (b) that OCGA § 7-4-16 is inapplicable in that there is no evidence of a liquidated demand. In the alternative, Advance argues the instant action as timely filed as accruing on April 21, 1999, for breach of contract — this on the claim that Daneshyar repudiated the agreement of the parties as to payment for goods by his letter to Advance of April 21, 1999, seeking an offset against Gulf Palace's Advance account.

"An action for breach of any contract for sale [of goods, as here,][3]

---

[2] Pertinently, Daneshyar wrote, *"[P]lease* credit our account with the difference which amounts to $31,650." (Emphasis supplied.)

[3] When the predominant element of a contract is the sale of goods, the contract is viewed as a sales contract and OCGA § 11-2-725 is the applicable statute of limitation notwithstanding the potential for rendering substantial services incident to the performance of

must be commenced within four years after the cause of action has accrued. . . . A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." OCGA § 11-2-725 (1), (2). "The statute of limitations on an open account runs from the date it is due." *Murray v. Lightsey*, 58 Ga. App. 100, 102 (197 SE 870) (1938); accord *Wolfe v. Brown-Wright Hotel Supply Corp.*, 87 Ga. App. 12, 14 (73 SE2d 82) (1952). "When the buyer fails to pay the price as it becomes due the seller may recover." OCGA § 11-2-709 (1). Further, "[u]nless otherwise provided in writing signed by the obligor, a commercial account becomes due and payable upon the date a statement of the account is rendered to the obligor." OCGA § 7-4-16. In this case, separate running of the statute of limitation occurred from each invoice until the July 11, 1996 invoice also was barred.

Citing *Mills v. Barton*, 205 Ga. App. 413 (422 SE2d 269) (1992), Advance argues that summary judgment for Daneshyar was error in that where the parties have no agreement as to the time of repayment, as here, the statute of limitation begins to run upon demand for repayment. It is in this regard that Advance makes the claim that the invoices of record make no demand for payment for lack of evidence showing that Daneshyar was individually invoiced or that he received any such invoice.

As a case arising out of personal loans with no agreement as to repayment, *Mills* and the case on which it relies are inapposite as to the instant suit on an open commercial account detailing transactions in which goods were sold. Id. at 413-414; see also OCGA § 7-4-16 (" 'Commercial account' means an obligation for the payment of money arising out of a transaction to sell or furnish, or the sale of, or furnishing of, goods or services other than a 'retail installment transaction' as defined in paragraph (10) of subsection (a) of Code Section 10-1-2."). Notwithstanding its remaining arguments to the contrary, Advance admits in judicio in its brief on appeal that Daneshyar was making payments on the amounts due on the statement of account sued upon. See generally *Gill v. State*, 229 Ga. App. 462 (494 SE2d 259) (1997); *State v. Griffin*, 204 Ga. App. 459 (419 SE2d 528) (1992). Daneshyar's April 21, 1999 letter to Advance on behalf of Gulf Palace requesting an offset against amounts owing on account is one in which Daneshyar acknowledges the same as "our" account. Advance does not challenge Daneshyar's deposition testimony to the effect that he made the payments upon Gulf Palace's Advance account. And not inconsistent with Daneshyar's payments of record and Danesh-

---

such contract. When the contract is predominantly one for the delivery of services, OCGA § 9-3-24 applies. See generally *Southern Tank &c. Co. v. Zartic, Inc.*, 221 Ga. App. 503 (471 SE2d 587) (1996).

yar's letter of April 21 to Advance, Advance's secretary, Marty Banks, deposed that while Advance had always invoiced Gulf Palace rather than Daneshyar individually, he regarded Gulf Palace as one and the same. Neither is there evidence in the record of any writing signed by Daneshyar as obligor making payment due Advance on account upon any date later than the date Daneshyar received the invoices sued on. Under these circumstances, Advance cannot maintain that the governing statute of limitation was not triggered upon the claim that the invoices in issue had been neither invoiced to Daneshyar nor received by him. Consequently, the superior court did not err in finding that the said statute of limitation began to run on July 11, 1996, the date last of the invoices sued on was received. OCGA § 7-4-16.

Neither is there merit in Advance's claim that the governing statute of limitation was not triggered under OCGA § 7-4-16 in that the amount Daneshyar owed on account was in dispute. While Advance correctly asserts that "[i]n the absence of a liquidated demand, OCGA § 7-4-16 is inapplicable," *Typo-Repro Svcs. v. Bishop*, 188 Ga. App. 576, 579 (2) (373 SE2d 758) (1988), " '[a] debt is liquidated when it is certain *how much is due* and when it is due. (Cit.)' (Emphasis supplied; emphasis in original deleted.) *Continental Carriers v. Seaboard C. L. R. Co.*, 129 Ga. App. 889, 890 (2) (201 SE2d 826) (1973)." *Typo-Repro Svcs. v. Bishop*, supra. " 'A liquidated claim is an amount certain and fixed, either by the act and agreement of the parties or by operation of law; a sum which cannot be changed by the proof.' (Punctuation omitted.) *Dept. of Transp. v. Dalton Paving &c.*, 227 Ga. App. 207, 219 (6) (b) (489 SE2d 329) (1997)." (Emphasis omitted.) *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 856 (1) (b) (501 SE2d 30) (1998). No writing in the record signed by Daneshyar as obligor extending the due date as to any of the invoices at issue, the payment due thereon became fixed, as a matter of law, upon Daneshyar's receipt thereof. Accordingly, summary judgment for Daneshyar was not improper for want of a liquidated demand. OCGA § 7-4-16; *Wheat Enterprises v. Redi-Floors*, supra.

Finally, Advance relies on *Franconia Assoc. v. United States*, 536 U. S. 129 (122 SC 1993, 153 LE2d 132) (2002), for the proposition that its cause of action is not time-barred, the governing statute of limitation as not beginning to run April 21, 1999, upon its receipt of Daneshyar's letter of that date seeking to offset amounts owing on account — such request constituting a repudiation and breach of the parties' agreement on payment.

In *Franconia Assoc.*, the United States Supreme Court held that the Emergency Low Income Housing Preservation Act of 1987 effected a repudiation of the right to prepay certain loan contracts which borrowers had previously negotiated to facilitate building low-

and middle-income housing. There, the Supreme Court concluded that the borrowers' repudiation claims were not time-barred because the cause of action would not accrue until the government dishonored its obligation to accept prepayment. Pertinently, the Supreme Court summarized,

> "the time of accrual . . . depends on whether the injured party chooses to treat the . . . repudiation as a present breach." 1 C. Corman, Limitation of Actions § 7.2.1, p. 488 (1991). If that party "elects to place the repudiator in breach before the performance date, the accrual date of the cause of action is accelerated from the time of performance to the date of such election." Id., at 488-489. But if the injured party instead opts to await performance, "the cause of action accrues, and the statute of limitations commences to run, from the time fixed for performance rather than from the earlier date of *repudiation*."

(Citation and punctuation omitted; emphasis supplied.) *Franconia Assoc. v. United States*, supra, 153 LE2d at 147.

While Advance characterizes Daneshyar's April 21, 1999 letter seeking offset authority as a repudiation and breach of the parties' agreement on payment, we conclude that the letter fails to qualify as such in that it "requests," but does not condition repayment upon being allowed, an offset. "[A] statement of intention not to perform except on conditions which go beyond the contract constitutes a repudiation." (Citation and punctuation omitted.) Restatement (Second) of Contracts, § 250, comment b; *Franconia Assoc. v. United States*, supra. No statement of intent not to perform of record, there is here no repudiation. In the absence of any repudiation, there can be no breach by filing suit before the time for performance or upon Advance's refusal to accept payment reduced by an offset taken.

Advance's cause of action thus as time-barred, the grant of summary for Daneshyar was proper.

*Judgment affirmed in Case No. A02A2386. Appeal dismissed as moot in Case No. A02A2387. Smith, C. J., and Ellington, J., concur.*

DECIDED FEBRUARY 3, 2003.

*John T. Longino*, for appellant.
*Coppedge & Leman, Warren N. Coppedge, Jr.*, for appellee.